**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JILL KATZ and MICHAEL KATZ, as Administrators of the Estate of SARAH KATZ, Deceased, | : : : : : | |
| | : | Civil No.: 2:23-cv-04135-TJS |
| Plaintiffs, | : : : | |
| vs. | : : | |
| PANERA BREAD COMPANY and PANERA, LLC, | : : : : | |
| Defendants. | : : : | |

## ORDER

AND NOW, this _____ day of _____, 2023, upon consideration of the Motion to Dismiss Plaintiffs' Complaint filed by Defendants Panera Bread Company and Panera, LLC, and any response thereto, it is hereby ORDERED that said Motion is GRANTED, and this action is hereby dismissed.

**BY THE COURT**:

_____
HON. TIMOTHY J. SAVAGE
UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JILL KATZ and MICHAEL KATZ, as Administrators of the Estate of SARAH KATZ, Deceased, | : : : : | |
| | : | Civil No.: 2:23-cv-04135-TJS |
| Plaintiffs, | : : | |
| vs. | : : | |
| PANERA BREAD COMPANY and PANERA, LLC, | : : : | |
| Defendants. | : : | |

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

For the reasons set forth in the accompanying Memorandum of Law, which is incorporated herein by reference, Defendants Panera Bread Company and Panera, LLC ("Defendants") respectfully move under Fed. R. Civ. P. 8(a), 9(b), and 12(b) to dismiss Plaintiffs' Complaint for failure to plead and failure to state a claim upon which relief can be granted. Defendants request that the Court hold oral argument on the issues raised by this motion.

1

WHEREFORE, Defendants request that this Court grant their motion and dismiss this action.

Respectfully submitted,

Dated: November 20, 2023

**SHOOK, HARDY & BACON L.L.P.**

*/s/ Joseph H. Blum*
Joseph H. Blum, Esq.
2001 Market Street, Suite 3000
Philadelphia, PA 19103
T 215.278.2555
jblum@shb.com

Marc P. Miles, Esq. (*pro hac vice* forthcoming)
Kristy A. Schlesinger, Esq. (*pro hac vice* forthcoming)
5 Park Plaza, Suite 1600
Irvine, CA 92614
T 949.475.1500
mmiles@shb.com
kschlesinger@shb.com

**GREENBERG TRAURIG LLP**

Gregory T. Sturges, Esq.
1717 Arch Street, Suite 400
Philadelphia, PA 19103
T 215.988.7820
sturgesg@gtlaw.com

Lori G. Cohen, Esq. (admitted *pro hac vice*)
Sara K. Thompson, Esq. (admitted *pro hac vice*)
Marcella C. Ducca, Esq. (admitted *pro hac vice*)
3333 Piedmont Road, Suite 2500
Atlanta, GA 30305
T 678.553.2385
cohenl@gtlaw.com
Sara.Thompson@gtlaw.com
duccam@gtlaw.com

*Attorneys for Defendants Panera Bread Company and Panera, LLC*

2

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JILL KATZ and MICHAEL KATZ, as Administrators of the Estate of SARAH KATZ, Deceased, | : : : : | |
| | : | Civil No.: 2:23-cv-04135-TJS |
| Plaintiffs, | : : | |
| vs. | : : | |
| PANERA BREAD COMPANY and PANERA, LLC, | : : : | |
| Defendants. | : : : | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

**Table of Contents**

**INTRODUCTION** ............................................................................................ **1**

**FACTUAL BACKGROUND** ............................................................................. **2**

**SUMMARY OF ARGUMENT** ......................................................................... **4**

**LEGAL STANDARD** ....................................................................................... **6**

**ARGUMENT** ..................................................................................................... **7**

    I.    THE STRICT LIABILITY CLAIMS FAIL. ....................................... 7

       A.   The Manufacturing Defect Claim Fails. ......................................... 8

       B.   The Design Defect Claim Fails. ...................................................... 9

       C.   The Failure to Warn Claim Fails. .................................................. 12

    II.   THE BREACH OF EXPRESS WARRANTY CLAIM FAILS. ........... 15

    III.  PLAINTIFFS' NEGLIGENCE CLAIMS FAIL. ............................... 17

       A.   The Negligent Manufacturing Claim Fails. .................................. 18

       B.   The Negligent Failure to Warn Claim Fails. ................................. 19

       C.   The Negligent Design Claim Fails. ............................................... 20

    IV.  THE NEGLIGENT MISREPRESENTATION CLAIM FAILS. ......... 22

       A.   "Safe and Clean" Is Not Actionable. ............................................ 23

       B.   The Complaint Admits Charged Lemonade Is a Fruit Juice Beverage. ...................... 24

       C.   The Complaint Admits Charged Lemonade's Caffeine Content Is Similar to Dark Roast Coffee .................................................... 24

    V.   PLAINTIFFS FAILED TO PLEAD A BASIS FOR PUNITIVE DAMAGES ............... 25

**CONCLUSION** ............................................................................................... **27**

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).............................................................................................6, 7, 17

*In re Avandia Mktg. Sales Practices & Prods. Liab. Litig.*,
   588 F. App'x 171 (3d Cir. Oct. 21, 2014)....................................................................16

*Baldino v. Castagna*,
   505 Pa. 239, 478 A.2d 807 (Pa. 1984) .......................................................................13

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)......................................................................................................6, 7

*Berrier v. Simplicity Mfg., Inc.*,
   563 F.3d 38 (3d. Cir. 2009).....................................................................................17, 21

*Bilt–Rite Contractors, Inc. v. The Architectural Studio*,
   581 Pa. 454, 866 A.2d 270 (2005) ..............................................................................22

*Bostic v. Ethicon Inc.*,
   2022 U.S. Dist. LEXIS 58554 (E.D. Pa.) .............................................................7, 8, 9

*Boyd v. Johnson & Johnson*,
   No. 965, 2002 WL 372959 (Pa. Ct. Com. Pl. Jan. 22, 2002)....................................16

*Chandler v. L'Oreal USA, Inc.*,
   774 Fed. Appx. 752 (3d Cir. 2019) ...............................................................................8

*Davis v. Berwind Corp.*,
   547 Pa. 260, 690 A.2d 186 (Pa. 1997) .......................................................................13

*Drumheller v. Johnson & Johnson*,
   2021 U.S. Dist. LEXIS 88941 (E.D. Pa. May 10, 2021) .....................................19, 22

*Fowler v. UPMC Shadyside*,
   578 F.3d 203 (3d Cir. 2009)............................................................................................6

*Fulton Fin. Advisors, Nat. Ass'n v. NatCity Investments, Inc.*,
   No. CIV.A. 09-4855, 2013 WL 5635977 (E.D. Pa. Oct. 15, 2013) (Stengel, J.) ....23

*Fusco v. Uber Techs., Inc.*,
   C.A. No. 17-00036, 2018 WL 3618232 (E.D. Pa. July 27, 2018).......................23, 24

i

*Gelman v. State Farm Mut. Auto. Ins. Co.*,
   583 F.3d 187 (3d Cir. 2009)........................................................................7

*U.S. ex rel. Gohil v. Sanofi-Aventis U.S. Inc.*,
   96 F. Supp. 3d 504 (E.D. Pa. 2015) ..........................................................23

*Grasinger v. Caterpillar, Inc.*,
   Civil Action No. 21-956, 2023 U.S. Dist. LEXIS 130669 (W.D. Pa. July 28,
   2023) ....................................................................................................9, 11

*Houtz v. Encore Med. Corp.*,
   No. 14-cv-0536, 2014 U.S. Dist. LEXIS 170481 (M.D. Pa. Dec. 1, 2014)..........................21

*Hutchinson v. Luddy*,
   870 A.2d 766 (Pa. 2005) .....................................................................25, 26

*Jeter v. Brown & Williamson Tobacco Corp.*,
   113 Fed. Appx. 465 (3d Cir. 2004) ......................................................12, 13

*Kester v. Zimmer Holdings, Inc.*,
   2010 U.S. Dist. LEXIS 59869 (W.D. Pa. June 16, 2010).........................15

*Kirkbride v. Lisbon Contractors, Inc.*,
   521 Pa. 97, 555 A.2d 800 (1989) ..............................................................26

*Kline v. Pfizer*,
   2009 U.S. Dist. LEXIS 623 (E.D. Pa. Jan. 6, 2009) .................................22

*Lance v. Wyeth*,
   85 A.3d 434 (Pa. 2014) ..............................................................................17

*Martin v. Johns–Manville Corp.*,
   494 A.2d 1088 (Pa. 1985) ..........................................................................26

*McGrain v. C.R. Bard, Inc.*,
   551 F. Supp. 3d 529 (Pa. 2021) .................................................................15

*Morris v. Pathmark Corp.*,
   592 A.2d 331 (Pa. Sup. Ct. 1991) ...............................................................7

*Parkinson v. Guidant Corp.*,
   315 F. Supp. 2d at 751 ...............................................................................15

*Robinson v. Delta Intern. Machinery Corp.*,
   274 F.R.D. 518 (E.D. Pa. 2011)................................................................19

*Runner v. C.R. Bard, Inc.*,
   108 F. Supp. 3d 261 (E.D. Pa. June 3, 2015).............................................22

*Salvio v. Amgen Inc.*,
  2012 WL 517446 (W.D. Pa. 2012) ........................................................................21

*Salvio v. Amgen, Inc.*,
  810 F. Supp. 2d 745 (W.D. Pa. 2011) ...................................................................21

*Shuker v. Smith & Nephew PLC*,
  2015 U.S. Dist. LEXIS 43141 (E.D. Pa. Mar. 31, 2015) .................................15, 20

*SHV Coal, Inc. v. Continental Grain Co.*,
  587 A.2d 702 (Pa. 1991) .......................................................................................26

*Smith v. Howmedica Osteonics Corp.*,
  251 F. Supp. 3d 844 (E.D. Pa. 2017) ...............................................................18, 19

*Terrell v. Davol, Inc.*,
  No. 13-5074, 2014 U.S. Dist. LEXIS 103695 (E.D. Pa. Jul. 30, 2014).................18

*Yurcic v. Purdue Pharma, L.P.*,
  343 F. Supp. 2d 386 (M.D. Pa 2004) ....................................................................15

**Statutes**

13 Pa. C.S. § 2313.............................................................................................................15

iii

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Defendants Panera Bread Company and Panera, LLC ("Defendants" or "Panera") submit this Memorandum of Law in Support of their Motion to Dismiss Plaintiffs' Complaint, and would show this Court as follows:

## INTRODUCTION

Plaintiffs allege that their 21 year-old college daughter Sarah Katz ("Katz") consumed a Charged Lemonade beverage from Panera and died an undisclosed length of time thereafter. Katz had been diagnosed with a life-threatening cardiac condition called Long QT Syndrome since age five that put her at increased risk of sudden cardiac arrest and death. The pled facts concerning the actual incident are extremely threadbare, amounting only to: "On September 10, 2022, following consumption of the Panera Charged Lemonade, Decedent, while with her friends at a restaurant in her apartment building, suffered a cardiac arrest." [Plaintiffs' Complaint ("Compl.") at ¶ 40.]

Panera's Charged Lemonade contains the same amount of caffeine per ounce (13mg) as its dark roast coffee. The fact that Charged Lemonade contains caffeine, along with the amount of caffeine, is prominently displayed on the machine dispensing it.

The Complaint claims that Katz was vigilant in avoiding caffeine. Yet, Katz allegedly ignored the warning concerning caffeine and purportedly consumed an unidentified portion of a Charged Lemonade. Katz suffered no immediate adverse health effects.

That evening, Katz was with friends, at a different restaurant (not a Panera café) and suffered a cardiac arrest. Sudden cardiac arrest is the unfortunate hallmark of someone suffering with Long QT Syndrome (as Katz had since age 5). There are no factual allegations linking a Charged Lemonade to Katz's cardiac arrest and resulting death, other than an undefined temporal

1

relationship.  Plaintiffs' claims are not supported by facts and are inconsistent with the law. They should be dismissed.

## FACTUAL BACKGROUND[1]

At its retail bakery-café locations, Defendants sell a beverage called Charged Lemonade, which is conspicuously marketed and labeled as containing caffeine. (*See* Compl. at p. 6 photograph 1, and ¶38.)  In September 2022, at the time of the alleged purchase and consumption by Katz, Charged Lemonade was available in three flavors—Fuji Apple Cranberry, Strawberry Lemon Mint, or Mango Yuzu Citrus. (*See id*.)  The label on the "bubbler" dispensers at each café (as well as on Defendants' website and mobile ordering application) clearly disclosed that each Charged Lemonade contains caffeine up to 260mg for the 20 ounce size and 390mg for the largest 30 ounce size (both without ice). (*See id*. at ¶ 46; *see also* photograph 1 on p. 6). Defendants also stated that Charged Lemonade contains "as much caffeine as our Dark Roast Coffee." (*Id.* at ¶ 61; see also photograph 2 on p. 6). Defendants' dark roast coffee contains 268mg of caffeine in a 20 ounce size. (*Id.* at ¶ 48).  Both beverages contain approximately 13mg of caffeine per ounce. Below are higher-resolution images of the tags on each Charged Lemonade bubbler dispenser in September 2022, as also shown in the Complaint on page 6.

---

[1] Although the Court must assume the facts pleaded by Plaintiffs are correct for the purposes of this motion, Defendants deny all of Plaintiffs' allegations and legal claims, and deny any liability to Plaintiffs whatsoever. By filing this motion, Defendants do not waive any defenses or claims, all of which are expressly reserved.



The Food and Drug Administration ("FDA") states that 400mg of caffeine per day is an amount not generally associated with dangerous, negative effects. (https://www.fda.gov/consumers/consumer-updates/spilling-beans-how-much-caffeine-too-much; last visited Nov. 17, 2023.)

Plaintiffs allege that on September 10, 2022, Katz suffered cardiac arrest and died sometime after allegedly consuming a Charged Lemonade ordered at a Panera café located at 200 S. 40th Street in Philadelphia. (Compl. ¶40.)  Katz's order history shows she did not purchase a Charged Lemonade that day, or ever.

Plaintiffs allege Katz was aware she suffered from Long QT Syndrome—a medical condition affecting the heart's electrical activity that can cause life-threatening arrhythmias—and had "abstain[ed] from energy drinks and highly caffeinated beverages." (*See id.* at ¶23.) Nevertheless, they allege "Decedent consumed the Charged Lemonade" and "following consumption," she suffered cardiac arrest on the evening of September 10, 2022 and subsequently died. (*See id.* at ¶¶ 39-41.)

Plaintiffs bring six causes of action against Defendants: Count I for Strict Liability, Count II for Negligence, Count III for Misrepresentation, Count IV for Breach of Express Warranty, Count V for Wrongful Death, and Count VI for Survival. Defendants deny Plaintiffs' allegations

3

and claims.  Each of these claims is not supported by facts or contrary to Pennsylvania law, and thus should be dismissed.

## SUMMARY OF ARGUMENT

Defendants move to dismiss the following claims:

A. **Manufacturing Defect:**  Plaintiffs plead a manufacturing defect under their strict liability and negligence claims.  A manufacturing defect claim arises when the end product was not manufactured according to its design.  There must be some deviation between how the product was supposed to be manufactured and how it actually was.  Here, Plaintiffs do not allege any facts regarding any deviation whatsoever.  Nor can they, since the subject beverage was discarded more than a year ago without having undergone any analysis or testing.

B. **Design Defect:**  Plaintiffs plead a design defect under their strict liability and negligence claims.  But they do not allege facts as to how the Charged Lemonade design could plausibly be defective.  Plaintiffs claim the Charged Lemonade contains caffeine and that caffeine causes cardiac arrest.  Yet, Plaintiffs admit that the total possible amount of caffeine in a large Charged Lemonade (assuming no ice) is 390mg, which is less than the amount of caffeine the FDA has stated is not generally associated with dangerous, negative effects (400mg). The mere fact that the beverage contains caffeine does not make it a defective design, even for those sensitive to caffeine.  By analogy, peanuts can be fatal to those with an allergy to them.  That does not make the design of peanut butter defective because it contains peanuts.  There may be issues with warnings concerning nuts, but the *design* of the food product is not defective.  There is no plausible defective design claim for a beverage that contains water, flavor, sweetener and caffeine.  If there was, nearly every cup of coffee would be defectively designed.

4

C.  **Failure to Warn:**  Plaintiffs plead failure to warn under their strict liability and negligence claims.  Yet, Plaintiffs admit and affirmatively plead that Defendants provided three different warnings about the caffeine content.  The machine dispensing Charged Lemonade clearly states: (1) the beverage contains caffeine; (2) the amount of caffeine in the beverage; and (3) a comparison to a popularly known beverage that contains caffeine (coffee).  While Plaintiffs side-step these warnings by claiming Defendants did not warn that their Charged Lemonade can cause cardiac arrest (which it cannot), there are no well-pled facts, only conclusions, that support such a warning.  Due to the ubiquitous nature of caffeine, its prevalence in our society (it is the most frequently consumed active food ingredient in the world), and Katz having been a sophisticated user (Ivy League student who was allegedly knowledgeable about caffeine and vigilant in avoiding caffeinated beverages), Plaintiffs' failure to warn claims are not plausible.  If they were—like the design defect claims— nearly every cup of coffee would need to come with a warning that it could cause cardiac arrest because it contains caffeine.

D.  **Negligent Misrepresentation:**   Plaintiffs claim Defendants made three negligent misrepresentations by marketing the Charged Lemonade as (1) "safe and clean;" (2) a "fruit juice beverage;" and (3) containing "as much caffeine as a dark roast coffee."  While this claim is not pled with specificity, there are other fatal problems.  The marketing terms "safe and clean" have been legally determined to be non-actionable puffery.  The other two claims are defeated by the Complaint itself, which admits their truths.  While Defendants do not market Charged Lemonade as a "fruit juice beverage," the Complaint admits that it contains fruit juice.  The Complaint also alleges facts to show that the Charged Lemonade

has as much caffeine as a dark roast coffee—both with about 13mg per ounce.  There are no facts in the Complaint to support any misrepresentation.

E. **Breach of Express Warranty:**  There are no facts alleged that Defendants made any warranties specifically to Katz.  Moreover, the language Plaintiffs claim constitutes a warranty, "safe and clean," has been legally determined to be non-actionable puffery.

F. **Punitive Damages:**  Putting aside that the majority of Plaintiffs' claims are for negligence, the Complaint does not contain any fact that—even if all true—would legally support a claim for punitive damages.

## LEGAL STANDARD

Dismissal under Fed. R. Civ. P. 8(a) and 12(b)(6) is required where, as here, plaintiffs fail to allege sufficient facts in support of a claim that would entitle them to relief, or where a matter can be disposed of as a matter of law based on facts in the complaint or documents attached to it. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 562–66 (2007). Under *Iqbal* and *Twombly*, the Supreme Court confirmed a complaint must contain specific factual allegations plausibly showing the plaintiff is entitled to the relief it seeks on each cause of action. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 562–66. The Court is not required to accept legal conclusions not supported by the well-pleaded facts of the complaint. *Twombly*, at 562–66 (plaintiff must plead sufficient "factual content" to support the inference that defendant is liable); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) ("[The] District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.").

A "complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its [well-pled] facts." *Fowler*, 578 F.3d at 211. To pass pleading muster, courts "require[] more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." *Twombly*, 550 U.S. at 555. Instead, "[f]actual

allegations must be enough to raise a right to relief above the speculative level." *Id.* Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the 'pleader is entitled to relief,'" and dismissal is warranted. *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009) (quoting *Iqbal* and Fed. R. Civ. P. 8(a)(2)); *see Iqbal*, 556 U.S. at 678 ("'naked assertion[s]' devoid of 'further factual enhancement'" do not suffice)).

## ARGUMENT

## I.      THE STRICT LIABILITY CLAIMS FAIL.

Plaintiffs allege three separate claims under their strict liability cause of action: manufacturing defect, design defect, and failure to warn. (Compl. at ¶ 92). Pennsylvania has adopted Section 402A of the Restatement (Second) of Torts as the law governing strict products liability claims. *Bostic v. Ethicon Inc*., 2022 U.S. Dist. LEXIS 58554, *18 (E.D. Pa.). In order to properly state a claim for strict products liability under Pennsylvania law, a plaintiff must make factual allegations showing that (1) the product must have been in a defective condition upon delivery, (2) the product was unreasonably dangerous to the consumer, and (3) the product caused the injuries sustained. *Morris v. Pathmark Corp*., 592 A.2d 331, 333 (Pa. Sup. Ct. 1991) (*citing Berkebile v. Brantly Helicopter* Corp., 337 A.2d 893 (Pa. 1975)). Thus, under whatever theory Plaintiffs intend to assert within their strict liability cause of action, they must plead that the Charged Lemonade was defective when it left Panera's control, and unreasonably dangerous to consumers. A complaint cannot simply "create [ ] a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555.

**A.      The Manufacturing Defect Claim Fails.**

To establish a manufacturing defect claim at the pleading stage, a plaintiff must allege facts showing the product did not conform to defendant's manufacturing specifications. *See Chandler v. L'Oreal USA, Inc.*, 774 Fed. Appx. 752, 754 (3d Cir. 2019) ("A manufacturing defect is a deviation from a product's intended design.") (*citing Tincher v. Omega Flex,* 104 A.3d 328, 395 (Pa. 2014)). Consequently, "a manufacturing or production defect is readily identifiable because a defective product is one that differs from the manufacturer's intended result or from other ostensibly identical units of the same product line." *Bostic*, 2022 U.S. Dist. LEXIS 58554, *19.

Plaintiffs have not and cannot meet this standard.  Plaintiffs' Complaint does not allege the Charged Lemonade allegedly consumed by Katz failed to conform to Defendants' manufacturing specifications or varied from the intended ultimate product result. The Complaint does not plead or allege (1) the manufacturing specifications for Charged Lemonade; (2) which aspects of these specifications the subject Charged Lemonade purportedly deviated from; (3) how the Charged Lemonade purportedly deviated from its intended design or from other seemingly identical products; or (4) how such alleged deviation proximately caused Katz's death. *See generally* Compl. at ¶¶ 55–58; 90.

Instead, Plaintiffs assert in a conclusory fashion that Charged Lemonade "was manufactured such that its quality and caffeine content could not be controlled due to its in-house preparation." (Compl. At ¶ 90(a)).  But Plaintiffs never allege that the in-house preparation of the beverage Katz allegedly consumed caused it to be manufactured differently than designed.  For example, Plaintiffs do not allege that the beverage Katz allegedly consumed had more caffeine than advertised or other undisclosed ingredients.  Without specific allegations detailing a deviation between the design and the beverage Katz alleged consumed, Plaintiffs defective manufacturing claim is not plausibly pled and cannot stand.

8

This defect cannot be cured by amendment because the Charged Lemonade Plaintiffs allege Katz consumed was not preserved. Plaintiffs have no means of inspecting or testing it to show any deviation from intended design specifications. The rest of Plaintiffs' manufacturing defect allegations do not deal with any deviation in manufacturing from the design, and instead simply use vague buzz words, such as: "a product in defective condition," "was unreasonably dangerous to consumers," "was not reasonably fit, suitable, or safe for its intended and represented purpose," and "which could be formulated more safely." (Compl. at ¶ 90.) These do not plead a cognizable claim for manufacturing defect

Plaintiff's manufacturing defect strict liability claim should be dismissed, with prejudice. *See Bostic*, 2022 U.S. Dist. LEXIS 58554, *19 (dismissing manufacturing defect claims because plaintiff failed to allege that the manufacture of the device at issue deviated from the design of that product or from other products manufactured by the defendant).

### B.     The Design Defect Claim Fails.

Plaintiffs' Complaint also fails to state a claim for strict liability design defect under Pennsylvania law, which requires a plaintiff to show the design of the product is unreasonably dangerous "by showing either that (1) the danger is unknowable and unacceptable to the average or ordinary consumer (the 'consumer expectation standard'), or that (2) a reasonable person would conclude that the probability and seriousness of harm caused by the product outweigh the burden or costs of taking precautions, (the 'risk-utility standard')." *Grasinger v. Caterpillar, Inc*., Civil Action No. 21-956, 2023 U.S. Dist. LEXIS 130669, at *33 (W.D. Pa. July 28, 2023). Under either standard, the Complaint fails to state a claim upon which relief may be granted.

According to the FDA, caffeine is the most frequently ingested active food ingredient in the world. (D Turnbull, Rodricks JV, Mariano GF, Chowdhury F. *Caffeine and cardiovascular health*. Regul Toxicol Pharmacol. 2017; 89:165). Plaintiffs' Complaint does not dispute that

Defendants disclosed the presence and amount of caffeine in Charged Lemonade to their consumers, including Katz. (Compl. at ¶ 46; *see also* photograph 1 on p. 6.) The presence of caffeine and its associated effects was therefore knowable to an ordinary consumer through the caffeine content disclosures displayed in several ways at Panera cafés.   Thus, the consumer expectation standard cannot apply.

The risk-utility standard also offers Plaintiffs no assistance.  The benefits of caffeine are undisputed and too numerous to list here.   But the world-renowned Johns Hopkins Medicine summarized nine of the top health benefits of drinking caffeine:

> **(1) You Could Live Longer** – Recent studies found that coffee drinkers are less likely to die from some of the leading causes of death in women: coronary heart disease, stroke, diabetes and kidney disease;

> **(2) Your Body May Process Glucose (or Sugar) Better** – Studies found that people who drink more coffee are less likely to get type 2 diabetes;

> **(3)  You're Less Likely to Develop Heart Failure** – Drinking one to two cups of coffee a day may help ward off heart failure, when a weakened heart has difficulty pumping enough blood to the body;

> **(4) You Are Less Likely to Develop Parkinson's Disease** – Caffeine is not only linked to a lower chance of developing Parkinson's disease, but it may also help those with the condition better control their movements;

> **(5)  Your Liver Will Thank You** – Research shows that coffee drinkers are more likely to have liver enzyme levels within a healthy range than people who don't drink coffee;

> **(6)  Your DNA Will Be Stronger** – Dark roast coffee decreases breakage in DNA strands, which occur naturally but can lead to cancer or tumors if not repaired by your cells;

> **(7)  Your Odds of Getting Colon Cancer Will Go Way Down** – One in 23 women develop colon cancer. But researchers found that coffee drinkers were 26 percent less likely to develop colorectal cancer;

> **(8)  You May Decrease Your Risk of Getting Alzheimer's disease** – Almost two-thirds of Americans living with Alzheimer's disease are women, and researchers found that women age 65 and older who drank two to three cups of coffee a day were less likely to develop dementia in general;

**(9)  You're Not as Likely to Suffer a Stroke** – For women, drinking at least one cup of coffee a day is associated with lowered stroke risk, which is the fourth leading cause of death in women;

[https://www.hopkinsmedicine.org/health/wellness-and-prevention/9-reasons-why-the-right-amount-of-coffee-is-good-for-you; (last visited Nov. 17, 2023.)]

Some of the benefits of caffeine are even codified in FDA regulations, wherein the use of caffeine is noted "to restore mental alertness or wakefulness during fatigue or drowsiness …." (21 CFR 340.50; U.S. FDA, 2023).

In *Grasinger*, *supra.* at *33-34, the court set forth several factors to determine whether there is a cognizable design defect claim.  Each fails here based upon the allegations in the Complaint.

(1) "The usefulness and desirability of the product—its utility to the user and to the public as a whole."  Caffeinated beverages are incredibly useful to the public as referenced above and acknowledged by the FDA in the Code of Federal Regulations.

(2) "The safety aspects of the product—the likelihood that it will cause injury, and the probable seriousness of the injury."  The FDA has stated that more caffeine than in the largest Charged Lemonade is not generally associated with dangerous, negative effects.

(3) "The availability of a substitute product which would meet the same need and not be as unsafe."  There are no comparable substitutes for caffeine in food and beverages.

(4) "The manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility."  The characters of caffeine are inherently in the substance, and a decaffeinated beverage does not have the same usefulness or utility.

(5) "The user's ability to avoid danger by the exercise of care in the use of the product." Katz had the unfettered ability to select a non-caffeinated beverage and even a non-caffeinated lemonade from Panera.

(6) "The user's anticipated awareness of the dangers inherent in the product and their availability, because of general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions."  According to the Complaint, Katz was entirely aware of caffeine and its properties.  The general public is also knowledgeable of the obvious effects of caffeine.  Defendants disclosed the existence of caffeine, the amount of caffeine and even compared it to another well-known caffeinated beverage.

There is very little, if any, probability or seriousness of harm from the amount of caffeine alleged in this case.  This is especially true considering that the most caffeine Katz *could have* consumed from a Charged Lemonade—assuming no ice and she drank every drop—is 390mg, which is an amount less than the 400mg the FDA states is not generally associated with dangerous, negative effects.  A reasonable person would *not* conclude that the probability and seriousness of harm caused by the product outweighs the burden or costs of taking precautions.  The risk-utility standard fails, and there is no strict liability claim for design defect.

### C.   The Failure to Warn Claim Fails.

Plaintiffs' Complaint fails to state a claim for strict liability for failure to warn under Pennsylvania law, which requires a plaintiff to establish that 1) a warning of a particular product was either lacking or inadequate, and 2) the user of the product would have avoided the risk had he been advised of it by the seller. *Jeter v. Brown & Williamson Tobacco Corp*., 113 Fed. Appx. 465, 468 (3d Cir. 2004). Liability cannot be imposed on a manufacturer when the warning in question plainly discloses the risk complained of or "[w]hen the dangers of a product are or should

be known to the user." *Id.* (*citing Phillips v. A-Best Prods. Co.*, 665 A.2d 1167, 1171 (Pa. 1995));

*Davis v. Berwind Corp.*, 547 Pa. 260, 269, 690 A.2d 186, 191 (Pa. 1997) (warning on a blender

stating "KEEP FINGERS OUT OF DOOR OPENINGS" was adequate as a matter of law, where

a plaintiff's fingers were injured by spinning blades inside the blender). Moreover, if warnings are

provided, the law presumes those warnings will be read and heeded. *See Baldino v. Castagna*, 505

Pa. 239, 478 A.2d 807 (Pa. 1984) (where a warning is given, the seller may reasonably assume it

will be read and heeded); § 402A of the Restatement (Second) of Torts, comment j.

Here, Plaintiffs pled that Defendants disclosed that the Charged Lemonade is a caffeinated

beverage. (Compl. ¶38.) Plaintiffs also state that Katz was "reasonably confident" the Charged

Lemonade was "a traditional lemonade and/or electrolyte sports drink containing a reasonable

amount of caffeine safe for her to drink." (Compl. ¶39.)  Plaintiffs admit that Katz was aware the

Charged Lemonade contained caffeine—as they should, because the dispensing machine

conspicuously stated that the beverage contains caffeine.

Plaintiffs also pled that the amount of caffeine was disclosed.  The specific amount of

caffeine in the Charged Lemonade is listed on the front of the dispenser that Plaintiffs allege Katz

used to dispense her beverage. (Compl. at ¶ 38; ¶71; p. 6 at photograph 1.).



The dispensers pictured in Plaintiffs' Complaint each prominently disclose that Charged Lemonade contains ~ 260 milligrams of caffeine in a 20 fluid ounce beverage and ~ 390 milligrams of caffeine in a 30 fluid ounce beverage. (Compl. at ¶ 38; *see also supra* at p. 2). Plaintiffs also alleged that Defendants disclosed the presence of caffeine in the Charged Lemonade by comparing it to a commonly known caffeinated beverage: coffee. (*Id*.)  Under Pennsylvania law, Defendants were entitled to expect that consumers, including Katz, would read and heed such disclosures of caffeine content.

Moreover, Plaintiffs' Complaint expressly alleges Katz was aware of her own peculiar risks associated with caffeine intake: "Decedent effectively managed her condition by abstaining from energy drinks and highly caffeinated beverages." (Compl. at ¶ 23)

In sum, the facts that are deemed true for consideration of this motion are:

- The presence of caffeine in a Charged Lemonade was disclosed;

- The amount of caffeine in a Charged Lemonade was disclosed;

- The amount of caffeine in a Charged Lemonade was compared to coffee;

- Katz knew there was caffeine in the Charged Lemonade; and

- Katz was aware of her heart condition.

Given these pled facts, the Complaint does not state any cognizable failure to warn claim.

Plaintiffs may argue their failure to warn claim should survive because the dispensing machine did not warn that the lemonade could cause a cardiac arrest.  First, it cannot.  Second, there are no well-pled facts, only conclusions, to support such a warning.  Caffeine is everywhere in our society.  It is the most frequently consumed active food ingredient in the world.  There are no allegations as to how a beverage—with less caffeine than the amount the FDA has stated is generally not associated with adverse health effects—can cause cardiac arrest, such that a warning

14

is mandatory.  If such a failure to warn claim was plausible, every location in the nation that serves coffee (i.e., coffeehouses, restaurants, grocery stores, airplanes, offices, federal buildings, private residences, etc.) would be required to warn of cardiac arrest.

Plaintiffs have not stated facts sufficient to allege a failure to warn claim in such a case, and the claim should be dismissed.

## II.    THE BREACH OF EXPRESS WARRANTY CLAIM FAILS.

Plaintiffs' claim for breach of express warranty is based entirely on language Pennsylvania law has previously found to be non-actionable—an allegation that Defendants marketed its Charged Lemonade as "safe and clean." (Compl. at ¶ 123). A claim for express warranty "arises out of the representations or promises of the seller," 13 Pa. C.S. § 2313, and must be "directed at consumers in order to induce purchases of the product," *Yurcic v. Purdue Pharma, L.P.*, 343 F. Supp. 2d 386, 394–95 (M.D. Pa 2004) (internal citations omitted). Additionally, express warranties are created by a seller, "through 'any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain.'" *Parkinson v. Guidant Corp.*, 315 F. Supp. 2d at 751 (quoting 13 Pa. C.S. § 2313). A plaintiff meets the basis of the bargain requirement by "proving that she read, heard, saw or knew of the advertisement containing the affirmation of facts or promise." *Id.* To plausibly plead an express warranty claim, some level of meaningful detail is required. *McGrain v. C.R. Bard, Inc.*, 551 F. Supp. 3d 529, 543 (Pa. 2021).

Courts have consistently dismissed express warranty claims lacking any specific representation to the purchaser or user that could form the basis of an actual express warranty— like Plaintiffs' claim here. *Kester v. Zimmer Holdings, Inc.*, 2010 U.S. Dist. LEXIS 59869, at *27– 31 (W.D. Pa. June 16, 2010) (dismissing express warranty claim based on the allegation that defendants "expressly warranted that [their devices] were safe and well accepted by users"); *see also Shuker v. Smith & Nephew PLC*, 2015 U.S. Dist. LEXIS 43141, at *12 (E.D. Pa. Mar. 31,

2015) (dismissing express warranty claim alleging only that defendants falsely warranted that medical devices were "'safe and fit for use for the purposes intended, . . . w[ere] of merchantable quality, . . . did not produce any dangerous side effects, and . . . w[ere] adequately tested and fit for [their] intended use'"); *In re Avandia Mktg. Sales Practices & Prods. Liab. Litig.*, 588 F. App'x 171, 175–76 (3d Cir. Oct. 21, 2014) (explaining statement in Avandia's label that drug "has been shown in clinical trials to be 'safe and effective' for its intended use cannot be read as an unqualified guarantee that Avandia would be safe and effective for all consumers"); *Boyd v. Johnson & Johnson*, No. 965, 2002 WL 372959, at *3 (Pa. Ct. Com. Pl. Jan. 22, 2002) (alleged statements that prescription drug was "efficacious and safe for [its] intended use[,]" which appeared in "Physicians' Desk Reference, Dear Doctor letters, advertisements and other print forms[,]" were "legally insufficient" to state a claim because there was "no indication . . . that the documents and representations the Plaintiff saw or heard are of the kind that can create an express warranty.").

Plaintiffs' breach of express warranty claim based on Defendants' marketing of the Charged Lemonade products as "safe and clean" is flawed. Not only is this non-actionable language, but there are no allegations that Katz ever saw any representations by Defendants of the safety or cleanliness of the Charged Lemonade products prior to her alleged purchase and consumption. Absent such pleading of specific facts that may form the basis of an actionable express warranty, this claim fails.

Because Plaintiffs' allegations are based entirely on language that Pennsylvania courts hold insufficient to support a breach of express warranty claim, this claim should be dismissed.[2]

---

[2] The parties met and conferred on November 15, 2023, following the Rule 16 Conference, and Plaintiffs indicated their willingness to amend this claim to convert it to a breach of implied

16

### III. PLAINTIFFS' NEGLIGENCE CLAIMS FAIL.

Plaintiffs' Complaint fails to state an actionable claim for negligence under Pennsylvania law. To prevail in a negligence action, a plaintiff must show: (1) defendant owed a duty to plaintiff to conform to a certain standard of conduct, (2) defendant breached that duty, (3) such breach caused the injury in question, and (4) actual loss or damage occurred as a result. *See Berrier v. Simplicity Mfg., Inc.*, 563 F.3d 38, 61 (3d. Cir. 2009). In evaluating a negligence claim under Pennsylvania law, "the main focus is on the conduct," and "the substantive allegations are more important than the labels." *Lance v. Wyeth*, 85 A.3d 434, 458 (Pa. 2014).

As a preliminary matter, a number of Plaintiffs' allegations pled in their negligence claim are simply threadbare recitations of the elements of a product liability claim:

> h. Defendants designed, formulated, assembled, manufactured, sold, promoted, supplied, and/or distributed a product in a defective condition;
> i. Defendants designed, formulated, assembled, manufactured, sold, promoted, supplied, and/or distributed a product that was unreasonably dangerous to consumers;
> j. Defendants designed, formulated, assembled, manufactured, sold, promoted, supplied, and/or distributed a product which was not reasonably fit, suitable, or safe for its intended and represented purpose;
> k. Defendants designed, formulated, assembled, manufactured, sold, promoted, supplied, and/or distributed a product which could be designed more safely;

(Compl. at ¶ 103(h)–(k)). The Court cannot "accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678. And merely reciting the elements of a cause of action is not sufficient to adequately plead it without plausible factual support. *Id.* The Complaint's barebones recitation of the elements of a negligence case and allegations that the product "could be designed more safely" are not sufficient to properly plead such a claim under Rule 8(a).

---

warranty claim after Defendants file this motion to dismiss. Defendants reserve all rights with respect to any future breach of implied warranty claim.

Although it is difficult to categorize Plaintiffs' negligence claims precisely because the "facts" asserted to support them are largely conclusory, it appears Plaintiffs intend to assert negligence claims for the same manufacturing defect, design defect and failure to warn theories asserted under their strict liability claims. Pennsylvania follows the Restatement (Second) of Torts as to product liability claims sounding in negligence. *See Smith v. Howmedica Osteonics Corp.*, 251 F. Supp. 3d 844, 852–53 (E.D. Pa. 2017). The allegations that Defendants were negligent in "manufacturing" the Charged Lemonade fall within the scope of a claimed manufacturing defect. *See* Restatement (Second) of Torts § 395. Negligent "design" is an allegation of design defect. *See id.* § 398. And Plaintiffs' negligent failure to warn claims are governed by §388 of the Restatement (Second) of Torts.  Each of these claims is fatally flawed.

### A.     The Negligent Manufacturing Claim Fails.

Plaintiffs make the following allegation, which can be categorized as, and is subsumed by, a negligent manufacturing claim:

> b.     the Panera Charged Lemonade is manufactured and formulated in-store by employees such that its caffeine content is not controlled and, in turn, has an innate and dangerous potential to vary;

(Compl. ¶ 103(b)). This is not really a "negligent manufacturing" claim, in that mixing syrup, concentrate and water to a precise recipe in a restaurant setting is not "manufacturing" under the plain meaning of the word. But assuming Plaintiffs intended to plead a manufacturing defect claim here, under Pennsylvania law they must allege (1) the manufacturer owed a duty, (2) the duty was breached and (3) such a breach was the proximate cause of plaintiff's injuries. *Terrell v. Davol, Inc.*, No. 13-5074, 2014 U.S. Dist. LEXIS 103695 at *25 (E.D. Pa. Jul. 30, 2014).

Plaintiffs' negligent manufacturing claim suffer the same fatal flaws as their strict liability manufacturing defect claims. (*See supra* § I(A)). A negligent manufacturing claim requires

Plaintiffs to plead facts that plausibly suggest Defendants failed to exercise reasonable care during the "manufacturing process" and committed a breach. Restatement (Second) of Torts § 395.

Here, the Complaint alleges no facts about Defendants' manufacturing process for the Charged Lemonade beverage Katz allegedly drank, how the Charged Lemonade beverage that Katz allegedly consumed deviated from its intended design, or how any such deviation allegedly caused Katz's injuries.  For example, Plaintiffs do not allege employees at the Panera café where Katz allegedly made her purchase "formulated" her Charged Lemonade in a way that deviated from design specifications or made it more dangerous to Katz. Nor do they allege that particular batches of the ingredients of the Charged Lemonade beverage were not manufactured to design specifications.  "Without any factual allegation as to the nature of what went wrong during the manufacturing process," Plaintiffs cannot plausibly state a claim for negligent manufacturing. *Smith*, 251 F. Supp. 3d at 853; *Drumheller v. Johnson & Johnson,* 2021 U.S. Dist. LEXIS 88941, *22 (E.D. Pa. May 10, 2021) (dismissing negligent manufacturing claim in which plaintiff "fail[ed] to allege facts showing a deviation from a suitable design.").

## B.    The Negligent Failure to Warn Claim Fails.

Plaintiffs' negligent failure to warn claim fails for the same reasons their strict liability failure to warn claim fails.  As explained above, Plaintiffs concede in their pleading that Defendants warned of (1) the existence of caffeine, (2) the actual caffeine content for each size, and (3) how a Charged Lemonade compares to another well-known caffeinated beverage.

A negligent failure to warn claim fails if the plaintiff "knew, or should have known, of that risk about which the missing warning would have cautioned." *Robinson v. Delta Intern. Machinery Corp*., 274 F.R.D. 518, 522 (E.D. Pa. 2011) *(quoting Mitchell v. Modern Handling Equip. Co*., 1999 WL 1825272, at *6 (Pa. Ct. Com. Pls. June 11, 1999)); *see also supra* §I(C).

Katz was an intelligent Ivy League college student. (Compl. ¶¶11-15.) She was knowledgeable about caffeine and allegedly vigilant in avoiding caffeinated beverages. (Compl. ¶¶ 18, 22, 23, 32.) In addition to the warnings Defendants provided, Plaintiffs admit that Katz was aware there was caffeine in the Charged Lemonade. (Compl. ¶39; Katz was "reasonably confident" the Charged Lemonade was "a traditional lemonade and/or electrolyte sports drink containing a reasonable amount of caffeine safe for her to drink.")

Having disclosed the presence of caffeine, the amount of caffeine and a comparison with another known caffeinated beverage, coupled with Katz knowledge of her heart condition, prior knowledge about caffeine and having actually known there was caffeine in the Charged Lemonade, there cannot plausibly be a failure to warn case stated here.

### C.    The Negligent Design Claim Fails.

The facts alleged in the Complaint do not support a claim for negligent design under Pennsylvania law. Plaintiffs make the following allegations, which can be categorized as claims of negligent design:

a.    the Panera Charged Lemonade was designed such that it could cause cardiac-related injuries to persons, especially to children, pregnant and breastfeeding women, and caffeine-sensitive individuals; and

q.    Defendants failed to cease manufacturing or otherwise alter the composition of Panera Charged Lemonade to produce a safer alternative, despite the fact that Defendants knew or should have known that such drinks posed a serious risk of bodily harm to consumers;

(Compl. at ¶ 103(a); (q)). These conclusory allegations "do not address the design of the [Charged Lemonade] in any level of meaningful detail." *See Smith*, 251 F. Supp. 3d at 853–54. Plaintiffs pled no facts that allow for the plausible inference that Defendants failed "to exercise reasonable care in the adoption of a safe . . . design as required by Section 398." *Id.* This is especially true here where the amount of caffeine in the largest size Charged Lemonade (390mg) is less than that which the FDA has stated is not generally associated with dangerous, negative effects (400mg).

20

This is not a traditional design defect case. Instead, it involves a food product. Whether a sandwich or a lemonade, the application of a design defect theory must attack the recipe. Here, there are no facts pled to state that the "design" of the lemonade was defective. It contains water, flavoring, sweetener and caffeine. So do most coffees. But there are no facts as to how or why that recipe is plausibly defective.

Moreover, under Pennsylvania law, "[t]he determination of whether a product was negligently designed turns on whether 'an alternative, feasible, safer design would have lessened or eliminated the injury plaintiff suffered.'" *Berrier v. Simplicity Mfg.,* 563 F.3d 38, 64 (3d Cir. 2009) (quoting *Habecker v. Clark Equipment Co*., 36 F.3d 278, 281 (3d Cir. 1994)). Simply put, Plaintiffs have made no allegations whatsoever as to any potential safer alternative design for the Charged Lemonade at issue, and given their allegations about the risks of virtually any amount of caffeine for Katz, it is not clear they believe a feasible, safer alternative design of a caffeinated lemonade beverage actually exists.[3] Plaintiffs' failure to specify a safer, feasible alternative design should preclude them from proceeding on a negligent design claim, and this claim should be dismissed under applicable case law. *Houtz v. Encore Med. Corp*., No. 14-cv-0536, 2014 U.S. Dist. LEXIS 170481, at *17 (M.D. Pa. Dec. 1, 2014); *Salvio v. Amgen, Inc*., 810 F. Supp. 2d 745, 754 (W.D. Pa. 2011) ("baldly stating that there are safer alternatives to Enbrel, without providing factual support that they exist, is insufficient to survive a 12(b)(6) motion").

---

[3] Nor can Plaintiffs simply argue regular non-caffeinated lemonade is a safer feasible alternative design, as Panera offered multiple non-caffeinated lemonade beverages alongside Charged Lemonade, which Decedent was free to choose instead, but those beverages did not have the same key attributes of the Charged Lemonade and were very different products that cannot constitute a feasible alternative design. *See Salvio v. Amgen Inc.*, 2012 WL 517446 at *21 (W.D. Pa. 2012) ("an alternative design must not be an altogether essentially different product.")

IV.     **THE NEGLIGENT MISREPRESENTATION CLAIM FAILS.**

Plaintiffs allege Defendants made the following misrepresentations:

a.      marketing the Panera Charged Lemonade as "safe" and "clean";

b.      marketing and offering the Panera Charged Lemonade as a fruit juice beverage, displaying it in the same or similar manner and location in which Panera offers all other non-caffeinated juice beverage options; and

c.      inaccurately marketing the Panera Charged Lemonade's caffeine content on the Panera website as "as much as [Panera's] dark roast coffee".  (Compl. at ¶ 113).

As a preliminary matter, the Court should dismiss Plaintiffs' negligent misrepresentation claim because it is identical to and rooted in Plaintiffs' negligence and strict liability claims. Each of the purported "misrepresentations" alleged by Plaintiffs are also alleged in the "Defective Warnings" Section of their Complaint. (Compl. at ¶ 61, 67, 74). "Courts in this District routinely dismiss fraud claims rooted in failure to warn theory." *Drumheller v. Johnson & Johnson*, 2021 U.S. Dist. LEXIS 88941, *46 (E.D. Pa. May 10, 2021); *see also Kline v. Pfizer,* 2009 U.S. Dist. LEXIS 623, *9 (E.D. Pa. Jan. 6, 2009) (dismissing misrepresentation claims because "[t]he very basis of these claims is that [defendant] knew of the dangers associated with [the drug] but fraudulently concealed this knowledge and fraudulently misrepresented that the drug was safe by failing to warn of its dangers."); *Runner v. C.R. Bard, Inc.*, 108 F. Supp. 3d 261, 269 (E.D. Pa. June 3, 2015).

Even if the Court were to consider Plaintiffs' negligent misrepresentation claims as independent from the failure to warn claims (and it should not), these claims fail to meet the pleading standards of Rule 8(a) or 9(b). The elements of negligent misrepresentation under Pennsylvania law are: (1) a misrepresentation of a material fact; (2) made under circumstances in which defendant ought to have known its falsity; (3) with intent to induce another to act on it; and (4) which causes injury to a party acting in justifiable reliance on the misrepresentation. *Bilt–Rite Contractors, Inc. v. The Architectural Studio*, 581 Pa. 454, 866 A.2d 270, 277 (2005).

22

Complaints alleging fraud-based claims must satisfy not only the pleading requirements of Rule 8(a), but also Rule 9(b)'s heightened pleading with particularity requirements. A complaint "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Plaintiffs' misrepresentation claims fall short of this standard. "The purpose of Rule 9(b) is 'to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior.'" *U.S. ex rel. Gohil v. Sanofi-Aventis U.S. Inc.*, 96 F. Supp. 3d 504, 517 (E.D. Pa. 2015) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)).

"A complaint satisfies Rule 9(b) if it sets forth precisely what statements or omissions were made in what documents or oral representations, who made the statements, the time and place of the statements, the content of the statements and manner in which they misled the plaintiff, and what benefit the defendant gained as a consequence of the fraud." *Fulton Fin. Advisors, Nat. Ass'n v. NatCity Investments, Inc.*, No. CIV.A. 09-4855, 2013 WL 5635977, at *4 (E.D. Pa. Oct. 15, 2013) (Stengel, J.) (quoting *In re Theragenics Corp. Sec. Litig.*, 105 F. Supp. 2d 1342, 1348 (N.D. Ga. 2000) (citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997)).

Although the allegations in Plaintiffs' Complaint fall well short of these pleading requirements, the misrepresentation claim also fails on its merits.

### A.    "Safe and Clean" Is Not Actionable.

Plaintiffs' misrepresentation claim should be dismissed because it is premised on non-actionable puffery. It is well-established that simple statements like "safe and clean" are not actionable under Pennsylvania law. *Id.* at *6 (citing *Berkebile v. Brantly Helicopter Corp.*, 337 A.2d 893, 903 (Pa. 1975) (statement that "[Y]ou are assured of a safe, dependable helicopter" was non-actionable puffery)). Actionable misrepresentation is "confined to statements [] of fact, and

23

do not reach the category of exaggerated sales-talk known as 'puffery.'" *Fusco v. Uber Techs., Inc.*, C.A. No. 17-00036, 2018 WL 3618232, at *5 (E.D. Pa. July 27, 2018). Whether a statement constitutes a fact capable of underpinning a misrepresentation claim or mere puffery is "a legal question that may be determined from the allegations in the complaint." *Id.* at *5 (citing *Commonwealth v. Golden Gate Nat'l Senior Care, LLC*, 158 A.3d 203, 216 (Pa. Commw. Ct. 2017)).

Plaintiffs' insufficiently pled allegations are premised on non-actionable puffery and cannot support a claim for misrepresentation as a matter of law.  The claim fails on this ground.

**B.     The Complaint Admits Charged Lemonade Is a Fruit Juice Beverage.**

Plaintiffs claim Defendants made misrepresentations by purportedly marketing the Charged Lemonade as a "fruit juice beverage." (Compl. at ¶ 113(b)). Yet, elsewhere in the Complaint, Plaintiffs defeat their own claim by alleging that each of the Charged Lemonades contains fruit juice. (Compl. at ¶ 44)  There is no misrepresentation of a material fact.  The claim fails on this ground.

**C.     The Complaint Admits Charged Lemonade's Caffeine Content Is Similar to Dark Roast Coffee.**

Plaintiffs claim Defendants made misrepresentations by stating that the Charged Lemonade had "as much caffeine as [Panera's] dark roast coffee." (Compl. at ¶103(c)).  Elsewhere in the Complaint, Plaintiffs state the facts that demonstrates this is true.

Plaintiffs allege the caffeine content of Charged Lemonade ranges from "260 milligrams in 20 fluid ounces" to 390 milligrams in 30 fluid ounces (Compl. at ¶ 46).  That equates to 13mg of caffeine per ounce.

Plaintiffs allege the caffeine content of Panera's dark roast coffee is "161 milligrams in 12 fluid ounces (small coffee), 216 milligrams in 16 fluid ounces (medium coffee), and 268

milligrams in 20 fluid ounces (large coffee)." This also equates to approximately 13mg of caffeine per ounce.

The statement that a Charged Lemonade has about as much caffeine as Panera's dark roast coffee is true, according to Plaintiff's Complaint. There is no misrepresentation of a material fact. The claim fails on this ground.

Aside from the failure to plead this claim with particularity, of the three statements Plaintiffs claim constitute misrepresentations, one is non-actionable puffery and the other two are demonstrably true by Plaintiffs' own Complaint. The negligent misrepresentation claim fails to state a claim upon which relief may be granted.

## V.       PLAINTIFFS FAILED TO PLEAD A BASIS FOR PUNITIVE DAMAGES.

Plaintiffs' prayer for relief includes punitive damages as one element requested, but they have pled no specific facts in support of the request for punitive damages in the Complaint. Instead, the Complaint only repeatedly pleads the language of the punitive damages standard, without actually pleading any specific allegations about Defendants' purported knowledge, recklessness, or outrageous conduct. (*See* Compl. ¶¶96-98, 107-110, 119-121 and 127-129.) These conclusory and minimal allegations fall far short of pleading the type of conduct required for punitive damages to be imposed under Pennsylvania law.

Punitive damages may only be awarded for conduct that is outrageous, because of the defendant's evil motive, or reckless indifference to the rights of others. *Hutchinson v. Luddy*, 870 A.2d 766, 770 (Pa. 2005) (quoting *Feid v. Merriam*, 485 A.2d 742, 747 (Pa. 1984) and Restatement (Second) of Torts § 908(2) (1979)). "[P]unitive damages are penal in nature and are proper only in cases where the defendant's actions are so outrageous as to demonstrate willful, wanton or reckless conduct." *Hutchinson*, 870 A.2d at 770. The Pennsylvania Supreme Court "has stressed that, when assessing the propriety of imposing punitive damages, '[t]he state of mind of the actor

is vital. The act, or the failure to act, must be intentional, reckless or malicious.'" *Id.* at 770 (citing *Feid* at 748; *Martin v. Johns–Manville Corp.*, 494 A.2d 1088, 1097 n.12 (Pa. 1985)).[4] "[A]n appreciation of the risk is a necessary element of the mental state required for the imposition of punitive damages." *Martin*, 494 A.2d at 1097 n.12.

Not only does Plaintiffs' Complaint not allege the kind of outrageous conduct required to obtain punitive damages, but the Complaint does not allege Defendants were subjectively aware of the specific risk experienced by Katz and consciously disregarded it, particularly as to consumers with Katz's cardiac condition. Under Pennsylvania law, a plaintiff must allege the "(1) defendant had a subjective appreciation of the risk of harm to which plaintiff was exposed and that (2) [the defendant] acted, or failed to act, as the case may be, in conscious disregard of that risk." *Hutchinson*, 870 A.2d at 772 (discussing *Martin*, 494 A.2d at 1097-98). "Punitive damages are appropriate to punish and deter only extreme behavior and, even in the rare instances in which they are justified, are subject to strict judicial controls." *Martin*, 494 A.2d at 1096.

The minimal and conclusory allegations of Plaintiffs' Complaint do not come close to alleging either extreme and outrageous conduct, subjective awareness, or conscious disregard and therefore Plaintiffs' prayer for punitive damages relief should be dismissed.

---

[4] *Martin* was abrogated on other grounds in *Kirkbride v. Lisbon Contractors, Inc.*, 521 Pa. 97, 555 A.2d 800 (1989). But its punitive damages analysis was followed in *SHV Coal, Inc. v. Continental Grain Co.*, 587 A.2d 702, 704 (Pa. 1991) and *Hutchinson,* 870 A.2d at 771 n.7 and controls here.

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request this Court grant their Motion to Dismiss Plaintiffs' Complaint.

Respectfully submitted,

Dated: November 20, 2023

**SHOOK, HARDY & BACON L.L.P.**

 */s/ Joseph H. Blum*
Joseph H. Blum, Esq.
2001 Market Street, Suite 3000
Philadelphia, PA 19103
T 215.278.2555
jblum@shb.com

Marc P. Miles, Esq. (*pro hac vice* forthcoming)
Kristy A. Schlesinger, Esq. (*pro hac vice* forthcoming)
5 Park Plaza, Suite 1600
Irvine, CA 92614
T 949.475.1500
mmiles@shb.com
kschlesinger@shb.com

**GREENBERG TRAURIG LLP**

Gregory T. Sturges, Esq.
1717 Arch Street, Suite 400
Philadelphia, PA 19103
T 215.988.7820
sturgesg@gtlaw.com

Lori G. Cohen, Esq. (admitted *pro hac vice*)
Sara K. Thompson, Esq. (admitted *pro hac vice*)
Marcella C. Ducca, Esq. (admitted *pro hac vice*)
3333 Piedmont Road, Suite 2500
Atlanta, GA 30305
T 678.553.2385
cohenl@gtlaw.com
Sara.Thompson@gtlaw.com
duccam@gtlaw.com

*Attorneys for Defendants Panera Bread Company and Panera, LLC*

27

## <u>CERTIFICATE OF SERVICE</u>

I, Joseph H. Blum, hereby certify that on the 20th day of November 2023, I caused a true and correct copy of Defendants' Motion to Dismiss Plaintiffs' Complaint and Memorandum in Support to be served via the Court's e-filing system upon all counsel of record.

*/s/ Joseph H. Blum*
Joseph H. Blum
