IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JILL KATZ and MICHAEL KATZ, As Administrators of the Estate of Sarah Katz, Deceased<br><br>*Plaintiffs,*<br><br>v.<br><br>PANERA BREAD COMPANY and PANERA, LLC<br><br>*Defendants.* | CIVIL ACTION<br><br>NO. 23-4135 |

## ORDER

AND NOW, this _____ day of _____, 2024, upon consideration of Plaintiffs' Motion to Compel Defendants' complete Defendants' Complete Responses to Supplemental Requests for Production of Documents, and any responses thereto, it is hereby ORDERED and DECREED that Plaintiffs' Motion is GRANTED.

IT IS FURTHER ORDERED that Defendants' objections to Plaintiffs' Supplemental Requests for Production dated March 19, 2024 are OVERRULED and Defendants shall provide the requested information and documents.

Defendants shall comply with this Order within seven (7) days of the date of this order or suffer sanctions upon further application by Plaintiffs to this Court.

BY THE COURT:

_____
J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JILL KATZ and MICHAEL KATZ, As Administrators of the Estate of Sarah Katz, Deceased<br><br>*Plaintiffs,*<br><br>v.<br><br>PANERA BREAD COMPANY and PANERA, LLC<br><br>*Defendants.* | CIVIL ACTION<br><br><br>NO. 23-4135 |

**PLAINTIFFS' MOTION TO COMPEL DEFENDANTS' COMPLETE RESPONSES TO SUPPLEMENTAL REQUESTS FOR PRODUCTION OF DOCUMENTS**

In accordance with the Federal Rules of Civil Procedure and Local Rule of the Eastern District Court of Pennsylvania 26.1(f), Plaintiffs submit the following Motion and Certification in support of their request to compel Defendants' complete responses to requests for production of documents:

**I.   BRIEF FACTUAL BACKGROUND**

This case is about a 21-year-old Penn student who died from cardiac arrest after drinking Panera Charged Lemonade. On October 23, 2023, Plaintiffs initiated this lawsuit on behalf of their daughter against Panera Bread Company and Panera, LLC ("Panera"). Discovery ensued and the parties took the depositions of approximately 18 fact witnesses. The discovery deadline is April 19, 2024. Plaintiffs' expert reports will be produced by the May 17, 2024 deadline.

On March 19, 2024, Plaintiffs issued supplemental requests for the production of documents.[1] These requests sought information squarely within the scope of discovery, and many of them were based on documents or information previously produced to counsel. Indeed, the majority of the requested documents represent documents that were responsive to Plaintiffs' initial discovery requests. Their existence was confirmed by documents produced in response to Plaintiffs' initial discovery requests, but were nevertheless omitted from the Defendant's first production of documents.

On April 18, 2024, Panera responded to Plaintiffs' requests by objecting to each and every item and withholding all responsive documents. Plaintiffs forwarded a deficiency letter to defense counsel the next day. Given the discovery deadline, Plaintiff also filed the instant motion.

## II.   LEGAL ARGUMENT

Rule 26 states:

> ***Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case***, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. ***Information within this scope of discovery need not be admissible in evidence to be discoverable***.

F.R.C.P. 26(b)(1) (emphasis added). A party has 30 days to respond in writing to a request for production of documents. *See* F.R.C.P. 34(b)(2)(A). Defendants' "objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest." F.R.C.P. 34(b)(2)(C).

---

[1] To avoid any confidentiality concerns, Plaintiffs can provide the discovery requests, responses, and any other documents that would otherwise be attached as exhibits at the Court's request.

"It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." *O'Connor v. AM Gen. Corp.*, No. CIV. A. 85-6679, 1992 WL 382366, at *2 (E.D. Pa. Dec. 7, 1992). The burden falls on the party resisting discovery to show specifically how each discovery item is not relevant or how each item is overly broad, burdensome, or oppressive. *Roseburg v. Johns–Manville Corp.*, 85 F.R.D. 292, 296–97 (E.D.Pa.1980).

Here, Panera has refused to provide information relating to the following requests, all of which are within the scope of discoverable information:

1. Any and all Voice of Guest survey results relating to Charged Lemonade from C2-C4 2022 *as referenced in PAN0001830 and PAN0003997*
2. Any and all Café Health Ask Now survey results relating to Charged Lemonade from C2-C4 2022 *as referenced in PAN0001830 and PAN0003997*
3. Any and all board meeting minutes from January 2021 to September 2022 that involve any discussions regarding Charged Lemonade *as referenced in PAN003394-95*
4. Any and all board meeting minutes from January 2021 to March 2021 involving discussions of the amount of caffeine in the Charged Lemonade *as referenced in PAN0003250* ("The input to raise the caffeine levels was directive feedback from JAB, so to be candid, the rationale is essentially to 'comply' despite the research")
5. Any and all board meeting minutes from March 2022 to September 2022 regarding Panera Customer Care Inquiries (PAN4100) as it relates to the Charged Lemonade
6. Any and all documents regarding supervisor responses to Panera Customer Care Inquiries (PAN4100) as it relates to the Charged Lemonade (i.e., "escalate supervisor")
7. Any and all documents involving communications with JAB Holdings *as referenced in PAN0003394* ("exchanges with Oliver JAB") as it relates to the Charged Lemonade
8. Boston Consulting Group (BCG) Slide Deck *referenced in PAN0001587 as an attachment to this email but omitted from the production*
9. Deck linked *in PAN0002029*
10. Panera Caffeine Guide referenced *in PAN0003115*
11. Any and all documentation relating to a reply email to PAN0001933
12. Any and all documentation relating to a reply email to PAN0001289

13. Any and all documentation relating to the full conversation excerpted in PAN0002212; PAN0002289; PAN0002308; PAN0002312; PAN0002321; PAN0002654; PAN0003385; PAN0003801; PAN0003998; PAN0004013
14. Any and all written training materials for Panera employees relating to mixing the Charged Lemonade from April 2021 to September 2022
15. Any and all written training materials for Panera employees relating to the service of Charged Lemonade from April 2021 to September 2022

Notwithstanding the fact that the sought-after information is clearly relevant and thus discoverable, most of the requested items were *referenced in another document*, therefore they plainly exist. Panera cannot credibly argue that these requests "lack foundation," are "overbroad in scope," etc. Moreover, disclaiming that "Defendants have not fully completed their investigation of the facts relating to this lawsuit" is not a sufficient excuse for failing to provide relevant, responsive discovery by the factual discovery deadline.

Defendants did not produce any more emails discussing Voice of Guest or Café Health Ask Now results. These weekly surveys quantitatively measured key metrics regarding customer perceptions of Panera's Charged Lemonade product. Panera has produced three documents reflecting weekly survey results for the product, which shed light on two crucial moments regarding the Defendants' negligence in this case.

First, the survey results from September 2021 reveal that during the initial market test of the product in selected cities, between 15–25% of customers who purchased Charged Lemonade were not aware the product contained caffeine at all—let alone that it contained up to 390mg of caffeine. Despite this early warning that Panera was effectively dosing up to a quarter of its customers with an extremely high serving of caffeine, without their knowledge or consent, Panera moved forward with a nationwide launch of the product without taking further precautions necessary to warn customers. Second, the survey results from March 24, 2022 to May 10, 2022,

covering the weeks immediately following the nationwide launch, confirmed that 24% of customers who purchased Charged Lemonade did not know the product contained caffeine.

These survey results are confirmed by the numerous customer complaints Panera received regarding customers consuming dangerous quantities of caffeine without their knowledge, in many cases resulting in serious health concerns. For example, shortly after the May 10, 2022 survey results were compiled, Panera CEO Niren Chaudhary forwarded Panera marketing executives a customer complaint from a 65-year-old Virginia man who experienced an irregular heart rhythm after consuming Charged Lemonade without knowing how much caffeine it contained. In response, Panera's marketing staff made modifications to the in-store marketing materials that marginally highlighted the fact that the product contained caffeine but did not enhance the attention drawn to the actual amount of caffeine the product contained. Compounding this inadequate response, Panera's marketing team adopted the tagline "Plant-based and Clean with as much caffeine as our Dark Roast Coffee." While true on a per-fluid-ounce basis, this tagline was deceptive to customers because a large Charged Lemonade was 12 ounces larger than Panera's largest coffee size. So, a large Charged Lemonade contained about 122 miligrams more caffeine than the largest available Panera Dark Roast coffee.

The documents Plaintiffs are now requesting are the results of surveys conducted after these changes to Panera's marketing materials. Plaintiffs know there are more results because emails produced by the Defendants from June 2, 2022 and August 12, 2022 mention continued Voice of Guest research. Conspicuously, this gap in the production coincides with the May/June 2022 reworking of the caffeine disclosure in café marketing materials and website marketing materials that were in response to customer complaints. The C3 Voice of Guest/Café Health Ask Now results would quantitatively measure whether the May/June 2022 caffeine

disclosures had any effect on guest perception of Charged Lemonade's caffeine content. It also coincides with Panera's subsequent decision to leave these marketing materials unchanged for the fourth quarter of 2022 ("C4 2022"), the period of time when Sarah Katz died after consuming Charged Lemonade. These survey results speak directly to Panera's knowledge of whether its marketing changes had any effect on customer perceptions of the product's caffeine content, whether additional changes were needed, and therefore whether Panera had knowledge that up to one in four of its customers were being dosed with an extremely high serving of caffeine on the day when Sarah Katz inadvertently consumed a highly caffeinated Charged Lemonade—like thousands of other customers, according to Panera's own data.

These documents, improperly withheld by the Defendants, speak directly to whether Panera was, at a minimum, negligent in its marketing of Charged Lemonade and whether it recklessly disregarded a known risk to human health by continuing to sell a product with a quantitatively proven inadequate warning. There is no principled reason why Panera should selectively withhold the survey results that speak most directly to its conduct in this case.

Other documents requested in this production are of similar probative value to elements of Plaintiffs' case and are therefore discoverable. The board meeting minutes from January 2021 through March 2021 involving discussions of the amount of caffeine in the Charged Lemonade are also referenced in emails and are clearly relevant as the decisions to launch this product and the decisions relating to the amount of caffeine content in the product. Similarly, multiple documents produced in discovery reflect the fact that the directive to dramatically increase the caffeine content of Charged Lemonade came from Panera's parent company, JAB Holdings. These C-suite–level documents are relevant to Panera's design and marketing of Charged Lemonade and are therefore discoverable.

Most of the other documents at issue here are simply requests that Panera produce entire conversations that were only partially produced, i.e., an original email with all replies omitted, as well as attachments that were omitted from responsive documents Panera produced. Similarly, the other requests largely seek documents that were discussed in responsive documents, and are relevant based Defendants' characterization of those documents, but were omitted from the production. Panera has no grounds for claiming that its selective production was responsive, but the complete production of these known, extant documents is undiscoverable.

Throughout this case and with the instant dispute, Plaintiffs have acted in good faith in requesting and exchanging information and documents. Panera has an obligation under the law to do the same. Plaintiffs must conduct a meaningful investigation and discovery into the communications and other information surrounding Charged Lemonade—the very product at issue in this matter—just as this Court has consistently ruled. Without the information, Plaintiffs will suffer severe prejudice in preparation for expert discovery and trial.

### III. CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that this Honorable Court enter an Order in the form attached hereto, compelling Defendants to provide complete responses to Plaintiffs' discovery requests within seven (7) days or suffer sanctions upon application to the Court.

Respectfully Submitted,

**KLINE & SPECTER, P.C.**

By:   */s/ Elizabeth A. Crawford, Esquire*
      Thomas R. Kline, Esquire
      Elizabeth A. Crawford, Esquire
      Michelle A. Paznokas, Esquire
      *Attorneys for Plaintiffs*

Dated: <u>April 19, 2024</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JILL KATZ and MICHAEL KATZ, as Administrators of the Estate of SARAH KATZ, Deceased<br><br>*Plaintiffs,*<br><br>v.<br><br>PANERA BREAD COMPANY and PANERA, LLC<br>*Defendants.* | Civil No.: 2:23-cv-04135-TJS |

## **CERTIFICATION**

I, Elizabeth A. Crawford, Esquire, attorney for Plaintiffs, hereby certify that Plaintiffs have made every reasonable attempt to obtain timely discovery, as noted in the attached Motion. Plaintiffs issued supplemental requests for production of documents on March 19, 2024, a month before the factual discovery deadline. These requests were based on documents and information previously provided to counsel. Defendants responded to those requests on April 18, 2024, a day before the factual discovery deadline, by objecting to each and every request and withholding the responsive documents. Given the April 19, 2024 factual discovery deadline, Plaintiffs' counsel forwarded a deficiency letter and submitted the instant motion in an abundance of caution.

Respectfully Submitted,

**KLINE & SPECTER, P.C.**

By:    */s/ Elizabeth A. Crawford, Esquire*
Elizabeth A. Crawford, Esquire
*Attorney for Plaintiffs*

Dated: April 19, 2024