**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JILL KATZ and MICHAEL KATZ, As Administrators of the Estate of Sarah Katz, Deceased<br><br>*Plaintiffs,*<br><br>v.<br><br>PANERA BREAD COMPANY and PANERA, LLC<br><br>*Defendants.* | CIVIL ACTION<br><br>NO. 23-4135 |

**ORDER**

AND NOW, this ______ day of _______, 2024, upon consideration of Plaintiffs' Motion for *In Camera* Review of the Decedent's Blood Test Results, Performed by Plaintiffs' Expert Toxicologist, and any responses thereto, it is hereby ORDERED and DECREED that Plaintiffs' Motion is GRANTED.

It is FURTHER ORDERED that Plaintiffs shall produce the above-mentioned test results for the Court's *in camera* inspection upon receipt of this Order.

BY THE COURT:

_________________________________
J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JILL KATZ and MICHAEL KATZ, As Administrators of the Estate of Sarah Katz, Deceased<br><br>*Plaintiffs,*<br><br>v.<br><br>PANERA BREAD COMPANY and PANERA, LLC<br><br>*Defendants.* | CIVIL ACTION<br><br>NO. 23-4135 |

**PLAINTIFFS' MOTION FOR *IN CAMERA* REVIEW OF THE DECEDENT'S BLOOD TEST RESULTS, PERFORMED BY PLAINTIFFS' EXPERT TOXICOLOGIST**

Plaintiffs, by and through their undersigned counsel, submit their motion for *in camera* review as follows:

## I. MATTER BEFORE THE COURT

Plaintiffs respectfully request the Court perform *in camera* review of the decedent's postmortem blood test results compiled by Plaintiffs' toxicologist, which Plaintiffs claim encompass expert work product. This request stems directly from an ongoing discovery dispute, which Plaintiffs have been unable to resolve with defense counsel despite the good faith efforts elaborated below.[1]

[1] To mitigate risk of disclosing confidential communications and other information, Plaintiffs are not attaching the relevant email correspondence as exhibits to this motion but will make it immediately available at the request of the Court.

## II. RELEVANT PROCEDURAL BACKGROUND

This case is about a 21-year-old Penn student who died from cardiac arrest after drinking Panera Charged Lemonade. On October 23, 2023, Plaintiffs initiated this lawsuit on behalf of their daughter against Panera Bread Company and Panera, LLC ("Panera"). Discovery ensued and the parties took the depositions of approximately 18 fact witnesses. The discovery deadline passed on April 19, 2024. Plaintiffs' expert reports will be produced by the May 17, 2024 deadline in accordance with the Court's Case Management Order.

### A. Plaintiffs' Postmortem Blood Testing

Prior to commencing suit, Plaintiffs (through their counsel) sought the requisite expert support, including that of an expert toxicologist. To be able to support the case, the expert requested and tested the decedent's postpartum blood, which he obtained directly from the coroner and tested through his lab. The expert's results were positive for caffeine and were consistent with the decedent having consumed Panera Charged Lemonade on the date of her death. Plaintiffs' toxicology expert will further elaborate on his findings in his upcoming report, per the Court's deadlines. The blood itself was never in the possession, custody, and/or control of Plaintiffs.

Plaintiffs' expert also did ***not*** prepare a lab report from his results of the testing until Plaintiffs requested his results in written form for purposes of sharing the results with the other experts they had retained in the case. The report is labeled "DRAFT TOXICOLOGY REPORT"; "FOR INTERNAL USE ONLY; "NOT FOR DISTRIBUTION TO CLIENTS" and "CONFIDENTIAL," and it was to be only shared with Plaintiffs' experts for purposes of their expert reports. The remaining blood, which was always available for testing by Defendants, is in the possession, custody, and/or control of the coroner's office and has been there since prior to the outset of litigation. Defendants could have requested it at any time for their experts' own testing.

In its first set of interrogatories and requests for production, Defendants requested "ALL DOCUMENTS supporting YOUR contention that KATZ consumed a Charged Lemonade on September 10, 2022." *See* Panera's First Set of Requests, attached hereto as Exhibit "A," at ¶ 12. Plaintiffs' initial response included some specific information but also reserved the right to supplement the response:

> **RESPONSE: Please see attached Panera statement; Panera-Katz-000001 through Panera-Katz-000004. Please see attached medical records at #11. By way of further response, see the interview given by Victoria Conroy on October 24, 2023, available at: https://www.wsbtv.com/news/local/roommate-reveals-new-details-aabout-death-21-year-old-who-drank-panera-charged-lemonade/UCGXJV7JDJGGVPRNXIKLTHNASY/**
>
> **By way of further response, Plaintiffs will be producing witnesses for deposition that will confirm that KATZ consumed a Charged Lemonade on September 10, 2022.**
>
> **Plaintiffs reserve the right to supplement this response.**

*See* Plaintiffs' Initial Responses, attached hereto as Exhibit "B," at ¶ 12. Plaintiffs then supplemented their responses on February 14, 2024:

> 14. For the ingredients(s) identified in Interrogatory No. 11, DESCRIBE all facts supporting YOUR contention that those ingredient(s), at the levels in the Charged Lemonade drink that KATZ purportedly consumed on September 10, 2022, were "dangerous" and/or "unreasonably dangerous" as alleged throughout YOUR Complaint.
>
> **ANSWER: Plaintiffs object to this Interrogatory to the extent that it seeks to elicit an expert report and/or confidential expert-attorney work-product protected by FRCP 26(b)(3)(A). The response to this request was discussed with consulting experts in anticipation of litigation and are not otherwise discoverable. Plaintiffs further object to this request on the grounds that it seeks the premature disclosure of experts and expert reports in violation of Federal Rules of Civil Procedure and the case management order. Plaintiffs reserve the right to supplement their response.**

> 15. For the ingredients(s) identified in Interrogatory No. 11, DESCRIBE all facts supporting YOUR contention that those ingredient(s), at the levels in a Charged Lemonade drink that KATZ purportedly consumed on September 10, 2022, adversely affect the heart's rhythm in Long QT patients.
>
> **ANSWER: Plaintiffs object to this Interrogatory to the extent that it seeks to elicit an expert report and/or confidential expert-attorney work-product protected by FRCP 26(b)(3)(A). The response to this request was discussed with consulting experts in anticipation of litigation and are not otherwise discoverable. Plaintiffs further object to this request on the grounds that it seeks the premature disclosure of experts and expert reports in violation of Federal Rules of Civil Procedure and the case management order. Plaintiffs reserve the right to supplement their response.**

*See* Plaintiffs' Supplemental Responses, attached hereto as Exhibit "C," at ¶ 14, 15.

Defendants also subpoenaed third-party depositions and documents, which included all emails ever sent from Dr. Robert Pass (the decedent's treating cardiologist) to the Katz family. Dr. Pass produced emails to Defendants on March 27, 2024, prior to his deposition on April 3, 2024. One of the emails confirmed that the family had completed caffeine testing prior to filing this lawsuit. He was never questioned about these caffeine results during his deposition nor was any issue raised by Defendants as to the existence of this testing and the results.

During discovery, Defendants also subpoenaed the deposition of the coroner (Dr. Albert Chu), who was named as a potential fact witness in this case by both parties. The deposition was scheduled and confirmed for April 8, 2024, at 9:00 AM Eastern Standard Time. At this deposition, it would have been further confirmed that Plaintiffs' expert toxicologist requested blood from the coroner to test for caffeine and that there was remaining blood at the coroner's office still available to be tested by Defendants, should their experts request testing prior to submission of their reports. However, this deposition was unilaterally cancelled by Defendants the day before and it was not rescheduled.

During litigation and ***before*** the discovery period lapsed, Plaintiffs also overtly referenced "postmortem blood testing (including the positive testing for caffeine and the negative toxicology for drugs and alcohol)" in their settlement conference summary submitted on April 12, 2024 (before the discovery deadline). *See* Plaintiffs' Settlement Conference Summary at 3. Plaintiffs orally referenced the testing during the settlement conference on April 19, 2024 (the day of the discovery deadline). Prior to that, Plaintiffs objected to many of Defendants' discovery requests for seeking premature disclosure of experts and expert reports.

To Plaintiffs' knowledge, Defendants never requested or even attempted to request their own blood samples from the coroner before the discovery deadline expired nor did they file a motion to compel with the Court to request this testing despite being aware of its existence prior to the discovery deadline.

**B. Defendants' Discovery Dispute**

Now, Defendants claim that Plaintiffs concealed the decedent's blood and/or blood test results and are threatening to file a motion to preclude the testing "at the appropriate time."

On April 26, 2024, defense counsel raised ***for the very first time*** their position that Plaintiffs had somehow been concealing the decedent's blood and/or blood test results. Defense counsel claimed that they became aware of Plaintiffs' post-mortem blood testing as of April 12, 2024, two full weeks before their email. Defense counsel also discussed Plaintiffs' references to the testing during the April 19, 2024 conference. Nevertheless, defense counsel chose to wait until ***after*** the discovery deadline lapsed to accuse Plaintiffs of "withholding" relevant evidence. Defendants then demanded that Plaintiffs produce all underlying test data as well as a date the blood would be made available for their own testing, or they would file a motion to compel and/or seek to exclude the evidence at trial.

On April 29, 2024, Plaintiffs responded to defense counsel's accusatory email, agreeing that the decedent's blood itself was ***not*** protected as privileged—the decedent's blood is not and never has been in Plaintiffs' possession, custody, and/or control but was with the coroner, who is ***not*** an expert or agent of Plaintiffs' counsel. The decedent's blood had been available for testing ***since the outset of litigation***, and the fact that Defendants chose not to test the blood was their own prerogative. Moreover, defense counsel requested then unilaterally cancelled the coroner's deposition the day before his testimony and never rescheduled it.

Plaintiffs' email further asserted that the blood test ***results*** are considered expert work product or expert opinion, as the testing was completed by their expert toxicologist prior to commencing suit and was prepared only for that purpose. But Plaintiffs attempted to find a compromise, stating, "If it is your position that the blood results compiled by our expert (again, prior to litigation) are ***not*** expert work-product, we will draft a stipulation that states the blood results are facts and, once signed, we will forward those results to you."

On April 30, 2024, defense counsel responded: "Defendants disagree and will seek appropriate remedial measures."

On May 1, 2024, Plaintiffs responded to Defendants' threat, suggesting that that they meet and confer over the phone or zoom in an attempt to resolve the dispute, or at least come to a common understanding of the discovery being disputed. The following options were discussed: (1) both sides agreeing that the testing is expert work product and would be produced on May 17, 2024; (2) both sides agreeing that the testing is factual as opposed to expert work product and signing a stipulation that the testing is factual; (3) having the Court review the testing *in camera*; (4) both sides "agreeing to disagree," with defense counsel later seeking remedial measures; and (5) Plaintiffs producing the results with redacted numerical values so defense counsel could

determine whether they would be able to stipulate to the factual nature of the testing without having the actual numerical results sway their position. While Defense Counsel seemed to think that Option 5 was a reasonable suggestion during the phone conversation, Defense counsel subsequently emailed that they were "not in a position to stipulation to the characterization of the contents of the document without having seen it." They also argued that Plaintiffs made no timely objection to the blood test results being expert work product—which is inaccurate, as demonstrated by Plaintiffs' responses to discovery pictured above. Defense counsel further stated, "To the extent you are concerned about preserving what you believe to be that privilege over the next 16 days, we will agree that by producing the test results Plaintiffs will not be waiving any work product privilege."

That same day, Plaintiffs responded in writing, seeking clarification about the prior email. In summarizing their call, Plaintiffs recapped the 5 ways the post-discovery deadline request could be handled as discussed above. Plaintiffs again asked which remedy defense counsel was seeking, reiterating that there was no attempt to conceal any information.

On May 2, 2024, defense counsel indicated that they "may be at an impasse." They again claimed Plaintiffs failed to properly object to the relevant discovery requests on the basis of expert work product. They argued that Plaintiffs concealed information "until right before the discovery cut off and the expert report deadline." They reiterated their offer to agree that no work product privilege has been waived, but if "Plaintiffs choose not to produce the data, we will address it at the appropriate time."

That day, Plaintiffs forwarded their supplemental discovery responses in which they in fact objected to Defendants' discovery on the basis of expert work product.

As of May 6, 2024, there has been no response. Notwithstanding that (1) Plaintiffs reasonably believe that the results of the lab testing completed by their expert is expert work product or expert opinion and (2) this issue was not raised by Defendants until after the discovery deadline had lapsed, Plaintiffs are filing the instant motion to have the Court address this issue prior to the production of expert reports in a good-faith effort to resolve this matter.

## III. LEGAL ARGUMENT

Under the Rules of Civil Procedure, "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." F.R.C.P. 26(b)(1). An expert who will testify at trial must also produce a report which contains "a complete statement of all opinions the witness will express and the basis and reasons for them," "the facts or data considered by the witness in forming them," and more. F.R.C.P. 26(a)(2)(B). However, the Rules protect drafts of any report, trial-preparation materials, and communications between a party's attorney and expert witnesses. *See* F.R.C.P. 26(b)(3)–(4). Where one party is claiming privilege and another party disputes it, an *in camera* inspection by the Court can be a helpful tool in resolving the dispute. *See, e.g.*, *Faloney v. Wachovia Bank, N.A.*, 254 F.R.D. 204, 207 (E.D. Pa. 2008) (conducting an *in camera* review of a contested email that was inadvertently produced but allegedly privileged under attorney-client privilege and the work product doctrine); *Mitchell v. Sturm, Ruger & Co., Inc.*, 842 F. Supp. 158, 159 (E.D. Pa. 1994) (conducting an *in camera* review of allegedly privileged psychology notes in a products liability case); *Crawford v. Dominic*, 469 F. Supp. 260, 265 (E.D. Pa. 1979) (noting *in camera* inspection "has frequently been used to protect the interests of plaintiffs and of municipalities in so-called 'police misconduct' cases").

Here, Plaintiffs have ***not*** intentionally concealed any discoverable information. Defense counsel is now painting a picture of Plaintiffs' alleged noncompliance with the discovery rules when, in reality, Defendants failed to conduct their own testing of the decedent's blood before the discovery deadline. While it is Plaintiffs' position that Defendants' decision ***not*** to perform their own postmortem blood testing does ***not*** grant them the power to see their expert toxicologist's testing results and that their request to do so is untimely given the discovery deadline has lapsed, Plaintiffs are attempting to resolve this dispute as effectively and efficiently as possible. Thus, in accordance with the Rules, Plaintiffs propose this Court conduct its own *in camera* review of the contested evidence and confirm or deny Plaintiffs' assertion of work product privilege or expert opinion. If the Court rules that the draft caffeine testing results by Plaintiffs' expert is fact as opposed to expert work product or expert opinion, then Plaintiffs will immediately produce the results to Defendants. If the Court rules that the draft caffeine testing results that are labeled as "draft" and "confidential" are indeed expert work product or expert opinion, then Plaintiffs will produce the testing with the production of their expert reports on May 17, 2024. Defendants will be afforded the opportunity to rebut those reports and the results of the testing in their rebuttal reports due on June 7, 2024 in accordance with the Court's Case Management Order.

## IV. CONCLUSION/RELIEF SOUGHT

For the foregoing reasons, Plaintiffs respectfully request this Court grant their motion and perform an *in camera* review of Plaintiffs' expert toxicologist's post mortem blood testing and results to affirm or deny Plaintiffs' assertion of expert work product or expert opinion. Plaintiffs are optimistic this course of action will resolve Defendants' discovery issue.

Respectfully Submitted,

**KLINE & SPECTER, P.C.**

By: */s/ Elizabeth A. Crawford, Esquire*
Thomas R. Kline, Esquire
Elizabeth A. Crawford, Esquire
Michelle A. Paznokas, Esquire
*Attorneys for Plaintiffs*

Dated: May 6, 2024